**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

| | | |
|---|---|---|
| United States of America, | ) | 3:09-CR-048-ECR-RAM |
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| Nelson McKee, | ) | |
| Defendant. | ) | |

At issue in this case is whether government counsel should be sanctioned for violating an Order of the Court.

### I. Factual and Procedural Background

On April 13, 2010, defense witness Laurie Abel was arrested outside the courtroom after she provided testimony in the sexual assault case of Nelson McKee. Laurie Abel's arrest was in contravention of this Court's verbal Order:

> The Order of the Court, Ms. Clerk, is that the United States Attorney shall not interfere with the presentation of the defense case through causing in any way the arrest of any witness who might come here based on any traffic offenses or the offenses which have been stated and presented to the Court here
> We just can't have that type of threat or interference here. You can take care of that on some other occasion and should do so certainly —

The Court set a hearing for May 7, 2010, to determine whether sanctions should be imposed on the United States Attorney because of the arrest of the witness, Laurie Abel. (Case No. 3:09-CV-048, Minutes of Court at 3 (#116).) Both parties were given fifteen

days within which time to file points and authorities.  On April 28, 2010, both the government and defendant filed points and authorities (## 126 and 127).

## II. Analysis

A. Sanctions

Courts may use their inherent power to manage proceedings and control the conduct of litigants. Chambers v. NASCO, Inc., 501 U.S. 32, 33 (1991). That power entails the ability to ensure obedience to their orders through sanctioning bad faith conduct that violates a court order. F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1136 (9th Cir. 2001). Sanctions under the court's inherent power are reserved for those cases in which the offender's conduct "constituted, or was tantamount to, bad faith." Primus Auto. Fin. Serv., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997). The concept of bad faith encompasses "a broad range of willful improper conduct," including conduct which is reckless "when combined with an additional factor such as . . . an improper purpose." Fink v. Gomez, 239 F.3d 989, 991-92, 994 (9th Cir. 2001); Gomez v. Vernon, 255 F.3d 1118, 1134 (9th Cir. 2001).

Similar principles that apply to criminal contempt proceedings apply to sanctions under the court's inherent power. Id. at 1137. "Criminal contempt is established when there is a clear and definite order of the court, the contemnor knows of the order, and the contemnor willfully disobeys the order." United States v. Rylander, 714 F.2d 996, 1001 (9th Cir. 1983). The penalty serves to vindicate the court's authority  and, unlike civil contempt, does not terminate upon compliance with the court's order. Id.

1     Criminal contempt proceedings require various procedural
2 protections, such as the "beyond a reasonable doubt" burden of
3 proof. Id. at 998. Individuals subject to sanction "are afforded
4 procedural protections, the nature of which varies depending upon
5 the violation, and the type and magnitude of the sanction. The
6 more punitive the nature of the sanction, the greater the
7 protection to which an individual is entitled." F.J. Hanshaw
8 Enters., 244 F.3d at 1137. Sanctions that are punitive and
9 intended to vindicate the court's authority and the integrity of
10 the judicial process require the same due process protections that
11 would be available in a criminal contempt proceeding. F.J. Hanshaw
12 Enterprises, Inc., 244 F.3d at 1138-39. Thus, in this case,
13 government counsel is entitled to, inter alia, the "beyond a
14 reasonable doubt" burden of proof.
15     Government counsel's actions were certainly not within the
16 spirit of the Court's Order. This is particularly so in light of
17 the following admonition: "You can take care of [the arrest] on
18 some other occasion . . . ." From the Court's viewpoint, this
19 statement indicates, at minimum, that arresting Laurie Abel before
20 the conclusion of the trial would be a violation of the Order.
21 Nevertheless, under a strained interpretation, the Court's Order
22 could be read to permit the arrest of Laurie Abel after she offered
23 testimony. The Court's admonition to arrest Laurie Abel on "some
24 other occasion" may not have been sufficiently clear to put
25 government counsel on notice that it would be inappropriate to
26 arrest Laurie Abel after her testimony was completed. The Court
27 further ordered that "the United States Attorney shall not
28 interfere with the presentation of the defense case through causing

3

in any way the arrest of any witness who might come here based on any traffic offenses or the offenses which have been stated or presented to the Court." It is conceivable that one could read this to mean that the United States Attorney should not arrest any witness in such a way as to interfere with the presentation of the defense case. Under that interpretation, arresting Laurie Abel after she offered testimony would not run afoul of the Court's Order. Thus, government counsel's actions in this case, though inappropriate, do not constitute bad faith, at least not beyond a reasonable doubt. No sanction will be imposed.

B. The Court's Authority

Court have the inherent power to protect witnesses. Wheeler v. United States, 640 F.2d 1116, 1123 (9th Cir. 1981) This power stems from the "indisputably . . . broad powers (of the trial judge) to ensure the orderly and expeditious progress of a trial." Id. at 1123 quoting Bitter v. United States, 389 U.S. 15, 16 (1976). In the present case, we ordered that the government not cause the arrest of a witness until after she returned home or, at the very least, until after the conclusion of the trial. We have discovered no binding precedent addressing the propriety of such an order, nor exploring the separation of powers issue which would inevitably animate such a determination. Ninth Circuit law, however, suggests that our Order does not run afoul of the Constitution or laws of the United States.

In Wheeler, the Ninth Circuit addressed a district court order requiring the custodian of a federal prisoner to prevent the prisoner from communicating with certain named witness. Id. at 1123. The court held that federal courts possess the inherent

power, "in certain unusual circumstances, [to] issue a post-trial order to protect a witness." Id. The exercise of the court's powers to protect a witness after the conclusion of the trial was justified as promoting the more general purpose of protecting the administration of justice from "abuses, oppression and injustice." Id. "By protecting the witness after the trial, the court is encouraging that witness, and other potential witnesses, to come forward and provide information helpful to the implementation of justice." Id.

It is notable that Wheeler court rejected "in full" the petitioner's argument "that the court exceeded its authority because it interfered with the executive branch's domain of prison administration without a showing of a constitutional violation . . . ." Id. If a court can issue a post-trial order protecting a witness, a fortiori can a court protect its witnesses during trial.

The government contends nonetheless that the holding in United States v. Santtini, 963 F.2d 585 (3d Cir. 1992), suggests we exceeded our authority. In Santtini, defendants in a criminal prosecution sought a deposition in Costa Rica of an alleged unindicted coconspirator, who was a fugitive in Colombia. Id. at 587. Columbia, unlike Costa Rica, lacks an extradition treaty with the United States. Id. at 592. The district court entered an order precluding federal law enforcement agents from arresting the subject if he came to Costa Rica to give the deposition. Id. at 587. The government appealed and alternatively sought extraordinary writ. Id. The Third Circuit held that the district court lacked the authority to order the government not to execute

the valid warrant, and concluded "that where a compelling government interest exists, a court simply may not invoke its 'inherent' authority to ensure that all witnesses whose testimony might exculpate the defendants testify at trial." Id. at 599. The court found that the government indeed had a "compelling interest in arresting [the unindicted co-conspirator] and prosecuting him for his crimes as well as an institutional interest in maintaining its power to arrest fugitives." Id. (internal quotation marks and citation omitted).

Although Santtini is not binding precedent, we note that Santtini is distinguishable from the our case in several important respects. First, in Santtini, the district court rejected the government's offer to arrest the subject only after the deposition had been concluded. Id. at 589. Instead, the district court's order prevented the government from effecting the subject's arrest "while he was in Costa Rica for the purpose of having his deposition taken." Id. This effectively prevented the arrest of the subject. The district court's order was thus far broader than the Order at issue. The Order at issue in this case explicitly advised government counsel that he could "take care of [the arrest] on some other occasion, and should do so certainly." Nothing prevented government counsel from causing Laurie Abel's arrest after she returned home or after the trial was concluded. We did not effectively preclude the government from arresting Laurie Abel. Compared to the intrusion in Santtini, our intrusion on the executive branch was slight.

Second, the warrant at issue in Santtini was indisputably a valid arrest warrant. Id. at 592. This was not the case with the

warrant pursuant to which Laurie Abel was arrested.  That warrant was issued in abstentia, without notice to Laurie Abel, and in violation of her due process rights.  (Case No. 3:10-CV-221, Order at 6 (#9).)  We subsequently quashed that warrant and granted Laurie Abel's Petition for Writ of Habeas Corpus.  (Id. at 7.)

Third, the governmental interest in Santtini was more compelling than the governmental interest in this case.  The events leading up to the issuance of Laurie Abel's arrest warrant and arrest are worthy of mention:

> Petitioner was sued civilly in tribal court for failure to pay her electric bill.  The amount at issue was $536.26.  Petitioner was served a copy of the summons and complaint on October 19, 2004, but failed to answer.  The tribal court held a hearing on January 21, 2005.  Petitioner was served with a notice of hearing regarding the January 21, 2005, hearing, but she did not appear.  On March 10, 2005, the tribal court issued a "Notice of Intent to Enter Default" and a separate "Order to Appear and Show Cause."  The order to show cause noted that Petitioner had called the clerk of the tribal court and explained that she could not attend the January 21, 2005, hearing because of a doctor's appointment in Boise.  The tribal court required proof of the doctor's appointment, and threatened to hold Petitioner in contempt if she failed to produce evidence of the appointment.  Despite its title, the "Order to Appear and Show Cause" order to show cause did not set a hearing, or any other specific date, at which Petitioner was to "appear"; apparently, the tribal court contemplated that Petitioner would simply contact the clerk of the tribal court and submit such proof.
> Petitioner did not, however, respond to either the notice of intent to enter default or the order to show cause.  There is nothing in our record that indicates when or if she was even served with those orders of the tribal court.
> On November 17, 2005, the tribal court entered default judgment against Petitioner in the civil action.  On August 2, 2006, the tribal court issued a contempt order, sentencing Petitioner in absentia to five days of detention for "Contempt pursuant to Ordinance 2003-SPO-09, section 4.50.015, (a)(3 & 4)."  On the same date, August 2, 2006, the tribal court issued the "Warrant to Apprehend," pursuant to which Abel was arrested on April 13, 2010.

7

(Id. at 2.) The government certainly has, in general, a compelling interest in causing the arrest of persons, pursuant to valid warrants. Even if the warrant at issue in this case were valid, however, the government's interest would still be less compelling than the interest at issue in Santtini. There was no governmental interest at play here remotely as compelling as the institutional interest in maintaining power to arrest fugitives. Santtini, 963 F.2d at 599.

### C. Lawfulness of the Order as a Defense to Sanctions

The government raises the unlawfulness of our Order as a defense to sanctions. This defense is meritless. Even if our Order was unlawful, the government cannot raise the unlawfulness of the Order as a defense to sanctions. See In re Establishment Inspection of Hern Iron Works, Inc., 881 F.2d 722, 726 (9th Cir. 1989) ("The contemnor cannot ordinarily raise the invalidity of the judicial order as a defense to a contempt charge.") Our system of law is premised on the "simple fact that orders, once issued, must be respected. If litigants were able to disobey the duly ordered judgments of the courts at will, the integrity of the judicial system-as well as the effectiveness of the administrative search system constructed by Congress-would be substantially undermined." Id. at 730.

### III. Conclusion

Government counsel's actions in this case, though not within the spirit of our Order, do not constitute bad faith, at least not beyond a reasonable doubt. Our Order was within our authority.

Courts have the inherent authority to ensure the orderly and expeditious progress of a trial and to protect witnesses.  Our intrusion on to the executive branch was slight and did not offend the principle of separation of powers.  Regardless, the unlawfulness of our Order would not be a meritorious defense to sanctions.

**IT IS, THEREFORE, HEREBY ORDERED** that government counsel will not be sanctioned for the arrest of Laurie Abel on April 13, 2010.

**IT IS FURTHER ORDERED** that the hearing, set for Friday May 7, 2010, is vacated.

DATED: May 6, 2010.

_____

UNITED STATES DISTRICT JUDGE